Denio, Oh. J.,
dissenting. Appeal from a judgment of the Supreme Court. The action was brought by Simon Springsteen, deceased, in his lifetime; and he dying after issue joined and before the trial, it was revived in the name of the plaintiffs, who are his personal representatives. The object of the action was to enjoin the defendants from proceeding to sell certain mortgaged premises under a foreclosure by advertisement which the defendants had caused to be published according to the statute, and to have the mortgage discharged of record.
The mortgage was executed by the plaintiff, Simon Springsteen, to the defendants, in their characters of administrator and administratrix of John J. Springsteen, deceased, and it bore date the 24th March, 1859. The clause of-defeasance was in these words: “ This grant is intended as a security for the payment of the equal half part of all lawful debts, dues, demands and claims now due or to grow due hereafter from the said John J. Springsteen, and fully and amply indemnify and save harmless said administrator and administratrix and estate from and against the payment of the equal one-half part of all such debts, dues, demands and claims, according to the condition of a bond this day executed,” &c. The mortgage contained the usual power of sale. The bond referred to was a common penal bond in the penalty of $1,500, with a condition in the same language as the foregoing clause of defeasance.
The advertisement of foreclosure signed by the defendants was dated August 8, 1863, and was for a sale to take place on the first day of November following. It claimed that there was due on the mortgage the sum of $453.07. The plaintiff’s ground of relief was that nothing was due on the bond and mortgage. The following facts appeared and were *709 found as conclusions of fact on a trial before a justice, without a jury.
John J. Springsteen, whose representatives the defendants were, died the 28th December, 1858, intestate and without descendants, leaving the plaintiff, his father, and the defendant, Susan M. H. Springsteen, his widow; and they were the only persons entitled to an interest in the succession to his estate. He died seized and possessed of a valuable real and personal estate. The defendants took out their letters of administration on the 12th January, 1859, and soon after paid off all the debts of the deceased, so far as they were known, and caused an inventory and appraisal of the estate to be made. On the 28th of the same month of January, the plaintiff and the defendant Susan M. H. Springsteen, with the assent of the defendant Samson, entered into an agreement for the division between them of the property of the deceased. The justice finds this to have been done with a view to prevent delay and expense, and for their supposed mutual benefit. They chose referees to assist in the division, and an instrument in writing was drawn up containing the agreement, which is therein stated to have been proposed by the referee, and agreed to by the father and widow of the deceased, and which is signed by them. By this paper an amount of $16,566.99, in stocks, securities for money and cash selected from the inventory, and of which a schedule is contained in the instrument, is set off to the widow, Susan M. H. Springsteen, to be received by her at her own risk of collection in full of her interest in the estate; and it is agreed that all other assets, whether real or personal, and whether contained in the inventory or not, be awarded to and received by the father, Simon Springsteen, in full satisfaction of his interest in the, estate. It was further agreed that “ all legal claims against said estate shall be paid equally by the heirs, Susan M. H. and Simon.” By an instrument bearing date the next day, the 29th January, executed under the hand and seal of the defendant Susan, she acknowledges the receipt of the $16,566.99, in full of her interest in the personal estate of the deceased, and also in full of her right of dower in the *710 lands of which he died seized; and in consideration of the. premises, she releases Samson, the co-administrator, and the plaintiff, her father-in-law, from all claims or demands which she might have against them, or either of them, as the widow of the deceased. A further instrument was signed by the plaintiff to the widow, bearing the same date with the bond and mortgage, to the effect that each of them should take, keep, retain and dispose of the parts and portions of the estate so set apart to be received by each of them respectively as their own individual property.
On the 22d August, 1860, the defendants had a final accounting, as the administrators of John J. Springsteen, before the surrogate of Tioga county. By the summary statement contained in the decree, the- aggregate of the personal assets was ascertained to be $33,154.12. The estate was charged with $32,837.12, as paid to the widow and next of kin, and with $971.27 for the administrators’ commissions and expenses, including surrogate’s fees and for a monument for the grave of the deceased. These were stated in items, the commissions being $431.84; the monument $285;. the funeral expenses $54, and traveling expenses $174, &c. These charges and allowances showed an excess of credits in favor of the administrator of $673.97, which sum was ordered to be paid to them out of moneys which might thereafter come to their hands from the assets of the estate. The decree also stated that there was an indebtedness against the deceased, which was a charge upon the estate, in favor of one B. G. Springsteen, of $175, which was directed to be paid by the administrators out of future assets. The justice found that this amount of $175 had been paid by the plaintiff, and' that he had taken an assignment of the demand.
The amount claimed to be due in the advertisement of foreclosure wal made out by taking one-half of the amount mentioned in the decree as overpaid by the administrators, and adding interest to the commencement of the foreclosure proceedings. .
The justice held, as matter of law, that the condition of the bond and mortgage did not embrace this claim, but was *711 limited to demands existing against the deceased in his lifetime, which had either matured or were running to maturity, and, hence, that .there was nothing shown to he due to the defendants when the foreclosure proceeding was commenced.
Judgment for a perpetual injunction, &c., was accordingly given against the defendants, with costs, which was affirmed at a General Term, upon which they brought this appeal.
There was no fair pretense for instituting the foreclosure proceeding which the defendants had commenced. The parties entitled to the succession of the intestate’s property agreed to divide it between themselves, without the delay and expense of distribution by the administrators. The intention probably was to divide the personalty equally according to the rights of the parties; and it would apparently have been just for the original plaintiff, the father of the deceased, to pay a moiety of the funeral expenses, and of the charges incident to a formal accounting, which was necessary to a discharge of the administrators and their sureties, and of the commissions and expenses, if any had been earned or incurred. A provision for these several charges was, perhaps, embraced in the clause of the agreement in which it is provided that all just claims against the estate should be paid equally by the parties, the widow and father of the deceased, though the language does not very clearly look to allowances for commissions or expenses. This, however, is not material, for whatever may be the construction of the agreement, it is very clear that the mortgage only embraces demands existing against the intestate in his lifetime, and which had become payable at the date of the agreement, or were to mature subsequently. The language does not admit of any greater latitude, and we have no right to extend it by construction on account of any view we may indulge, that a more comprehensive provision would have been equitable and just. But I have no doubt but that the instruments are precisely in accordance with the intention of the parties to them. The amicable division was entered into to save expense and delay. The idea naturally was, that if the persons entitled voluntarily divided the property between *712 them, the expense of administration would be saved. The division was made only about a fortnight after the issuing of the letters. An.inventory had been made out, and the value of the assets thus ascertained; but it was not shown, and it is not probable that any further expense had been incurred. When the mortgage was executed, about two months afterward, the debts, so far as they had been made known, had been discharged; but it was not certain but that others would subsequently be claimed, and, if they should be, the administrators would be obliged to pay them to the extent of the assets of the deceased which they had parted with. It was quite right and natural that the father, who had received a moiety of the personal property as a distributee, should give security to contribute in the same proportion to any debts which should subsequently appear. This was all which the exigency of the case apparently called for, and, hence, .the condition was limited to that object. Ho debts, except the small amount which the father paid, were ever disclosed. There was, therefore, no ground for enforcing the mortgage. The attempt, by means of it, to collect the considerable amount claimed for commissions and expenses, and the other items allowed by the surrogate, was wholly unauthorized.
The counsel for the defendants makes a point, that, after death of the original plaintiff, the mortgagor, the revival of the action should have been in favor of the parties who succeeded to the ownership of the mortgaged premises; and it is said that the personal representatives had no right to substitute themselves as plaintiffs; and that the judgment is, for that reason, erroneous. It is arguéd that the provision of the Kevised Statutes, which declares that an heir or devisee of land, incumbered by a mortgage given by the ancestor, shall take the estate subject to the lien, has a bearing upon the question. (1 E. S., 749, § 4.) This, I think, is a mis-apprehension. The marshaling of the assets between the real and personal representatives is a matter which does not concern the creditor. He has a right to prosecute the personal representatives, and they would be proper and necessary parties to a bill of foreclosure, for which the statutory proceeding is, in *713 a certain sense, a substitute. As to the creditor, the personal debt is the principal thing, and the mortgage a collateral security. The statute providing for foreclosures by advertisement, requires that the notice of sale should be served on the personal representatives of the "mortgagor. (Laws 1844, eh. 846, § 1.) ¡Representing, as they do, the personalty, and the bond and mortgage being prima faeie securities for a personal debt, the representatives are entitled to be heard upon a question relating to the existence of the alleged mortgage debt. The equity of the personal representative against the heir or devisee may have been changed after the execution of the mortgage by acts of the mortgagors.
The order substituting the personal representatives of Simon Springsteen in his place is not printed in the case, and we cannot, therefore, say whether the motion was litigated, consented to, or taken by default. Error cannot, therefore, be predicated of the order. Again, no objection that the plaintiffs were not proper parties, or that the owner of the land should have been joined with or without them, was taken on the trial, or is alluded to in the exceptions taken after the decision. There is, it is true, a general exception to the conclusion of the referee, that the plaintiffs are entitled to judgment for a perpetual injunction, but a defect of parties, or an objection that the plaintiffs are not proper parties, is not hinted at. Moreover, the complaint asked for a judgment requiring the mortgage to be satisfied of record; and the judgment actually given enjoins the defendants, not only against proceeding under the advertisement of foreclosure, but from proceeding at any time upon the 'bond and mortgage, or either of them, by suit or otherwise, for collecting the commissions and expenses allowed by the surrogate; and this relief was within the scope of the case made by the complaint, and was consistent with the case made by the evidence. Surely, the cancellation of a bond and mortgage, given by an intestate, or what is the same thing, an injunction against enforcing such securities, is a subject in which the administrators have a legal interest.
The owner of the land was, doubtless, a proper party to *714 the controversy, and it would have been necessary to havr. made him a party to the action, if the objection of want o 1 parties had been seasonably made. It was made for the firs' time on this appeal, and we think it is not now available.
There was an exception to a ruling as to evidence on th« trial which ought to be noticed. A witness, who drew the agreement to divide the property, was allowed to 'answer a question by the plaintiffs’ counsel, whether anything was said between the parties, at that time, as to whether that was a final settlement between them; and he answered, in substance, that they said it was a final settlement, except what was legally necessary to close -up the estate. The ruling was excepted to. I do not think the evidence wás admissible, for the reason-that the instrument, which was then executed, was the only legal evidence of what the agreement was. But the decision of the justice, and the judgment of the court at General Term, are sustained upon the provisions of the instrument itself. The plaintiffs did not need any further proof of the nature of that transaction, and the parol evidence did not change the case in any respect to the prejudice of the defendants.
I am for affirming the judgment of the Supreme Court.
Davies and Campbell, JJ., concurred with Denio, Ch. J.
Brown, Porter, Wright, and Davis, JJ., were for reversal with a modification of the allowance to the administrators, by striking out the sum ($285) charged for monument.